**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RICHARD HARTY,**

                **Plaintiff,**

-vs-                                                      Case No. 6:11-cv-1041-Orl-31KRS

**CITY OF SANFORD,**

                **Defendant.**

_____

# ORDER

This cause comes before the Court on a Motion for Summary Judgment (Doc. 23) filed by Defendant, City of Sanford ("Sanford"); a response (Doc. 26) filed by Plaintiff Richard Harty ("Harty"); and a Reply (Doc. 30). For the reasons set forth below, the Court will deny summary judgment.

**I. Background**

This case arises under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101 et seq. Harty was employed by Sanford from May 2007 through January 29, 2010. (Doc. 1, ¶ 8). Prior to his employment with Sanford, Harty was enlisted with the Navy and worked as a welder from 1983 through 1991. (Doc. 24-1 at 18-19). While enlisted in the Navy, Harty injured both knees. (*Id*. at 7-15). Even after corrective surgery, his right knee did not heal completely, and in 1991 Harty was medically discharged from the Navy because he was unable to do the work required of him as a welder. (*Id*. at 27-28). In or about 2007, Harty was told by a doctor that he could not kneel, squat, run, jump, climb stairs or a ladder, or walk up or down

inclines. He was assigned a 40% disability rating by the Veteran's Association based on his knee injury. (*Id*. at 33-34). Despite his injury, Harty continued to engage in the restricted activities by modifying the way he performed them–he would bend at the waist or sit on his hip, for example, rather than kneel. (*Id*. at 36).

Harty was initially hired by Sanford as an Equipment Operator. (*Id.* at 40). In applying for the position, Harty reviewed the essential functions listed in the job description and understood that if he could not perform the essential functions of the job, he would not be qualified for the position. (*Id*. at 41-42). At the time Harty applied for the Equipment Operator position, Dr. Monette, Sanford's designated physician, performed a physical examination of Harty to ensure that Harty was physically capable of performing the essential functions of the job. (*Id*. at 52). Sanford's offer of employment was conditioned on Harty passing the pre-employment physical. (*Id*. at 54). Dr. Monette determined that Harty was capable of performing all of the essential functions of an Equipment Operator as listed in the job description. (*Id*. at 45).

Approximately two weeks after Harty began working for Sanford, he applied for a foreman position. (*Id*. at 57). At the time he was awarded the foreman position, Harty asserts that he was able to perform all the physical requirements listed in the foreman job description. (*Id*. at 61). Dr. Monette's evaluation was not premised on the working foreman position, and an additional fit-for-duty exam was not conducted before Harty assumed the working foreman position. (*Id*. at 53-54; 56-59). As a "working foreman," the job description required Harty to be able to perform the job of each member of his crew, because he would be required to cover for any absent crew member. (*Id*. at 61-63). This may including physical tasks such as standing, walking, reaching,

climbing, balancing, stooping, kneeling, crouching, crawling, and lifting or moving up to fifty pounds. (Doc. 23-1 at 8).

On September 4, 2008, Harty re-injured his knee while assisting one of the bricklayers on his crew. (Id. at 93-94). Harty was examined by Dr. Monette who specified that he be placed on light-duty. (Doc. 1, ¶ 11). It is unclear exactly what light-duty encompassed, but both parties agree that Harty worked in this capacity until he returned to full-time regular duty as a working foreman on June 30, 2009. (Doc. 1, ¶ 12). On October 12, 2009, Dr. Chase, plaintiff's treating physician, evaluated Harty and opined that Harty had reached maximum medical improvement and could resume normal work activities with the exception that he could not squat, kneel, use stairs, run or jump. (Doc. 24-1 at 136). Upon learning of the restrictions, Sanford sent Harty to Dr. Monette for a fit-for-duty evaluation on January 21, 2010. (*Id*. at 137). Dr. Monette agreed with Dr. Chase's evaluation. (*Id*.). On January 29, 2010, Sanford terminated Harty on the grounds that he was unable to perform the essential functions of his job as working foreman. (Doc. 1, ¶ 17). Harty asserts that in spite of the restrictions he was able to, and did, perform all the essential functions of the "working foreman" position from the time he returned to regular duty on June 30, 2009, through his termination date. (Doc. 1, 12-13; Doc. 24-1 at 207). Harty attempted to appeal Sanford's decision to terminate his employment, but was denied an appeal. (*Id*. 17).

**II. Standard**

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of

showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

### III. Analysis

Under the American with Disabilities Act (ADA), an employer is prohibited from discriminating against "a qualified individual with a disability." 42 U.S.C. §12112(a). The Eleventh Circuit has applied the burden-shifting analysis of Title VII employment discrimination

claims to ADA claims. *See Jones v. STOA International/Florida, Inc.*, 422 F. App'x 851 (11th Cir. 2011) (citing *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007)). In the first step of the burden shifting analysis, the plaintiff must establish a prima facie case of discrimination by showing that he "(1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability." *Hillburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999) (citing *Morisky v. Broward County*, 80 F.3d 445, 447-49 (11th Cir. 1996)). Additionally, the plaintiff must establish that the employer had "actual or constructive knowledge of the disability or considered [him] to be disabled." *Murata Electronics*, 181 F.3d at 1226 (citing *Morisky*, 80 F.3d at 448). Sanford argues that Harty fails to establish a prima facie case because he has not shown, (1) that he is disabled under the ADA, or (2) that he is an otherwise qualified individual. The Court will address each argument in turn.

**A. "Disabled"**

In order to assert a discrimination claim under the ADA, Hardy must first establish that he is disabled. *Murata Electronics*, 181 F.3d at 1226. Pursuant to 42 U.S.C.A. §12102 (2009), "the term 'disability' means, with respect to an individual - (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;[1] (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." An individual may establish coverage under any one of the three prongs of the definition of disability. 29 C.F.R. §1630.2(g)(2). With respect to the first prong of the definition of disability, " 'substantially limits'

---

[1] Pursuant to 42 U.S.C.A. §12102(2)(A) (2009), "[m]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."

is not meant to be a demanding standard." 29 C.F.R. §1630.2(j)(1)(i). Rather, "'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." *Id.* "The determination of whether a plaintiff's impairment 'substantially limits major life activities' is made on a case-by-case basis . . . ."*Albertson's, Inc v. Kirkingburg*, 527 U.S. 555, 566 (1999); 29 C.F.R. §1630.2(j)(1)(iv)(2012). While the ADA does not define when a physical impairment "substantially limits" a major life activity, the Eleventh Circuit has looked to EEOC regulations in making this determination. *See Murata Electronics,* 181 F.3d at 1226; *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996). The EEOC Regulations provide:

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. §1630.2(j)(1)(ii).

Sanford argues that Harty is not "substantially limited" in any major life activity because, as he admits, he could perform all the tasks required of him, albeit, "in a different way." (Doc. 24-1 at 36). Harty testified in deposition that he is substantially limited in walking, bending, squatting, standing, and kneeling, (Doc. 24-1, at 26:10-19), he takes pain medication, (Doc. 26 at 10) and is prescribed a cane or crutches to assist in walking. (Doc. 24-1, at 107, 109, 117). As of the date of his termination, he was given a forty percent disability rating by the Veterans Administration, (Doc. 26 at 9), and two physicians opined that Harty was permanently restricted from squatting, using stairs, kneeling, running or jumping. (Doc. 24-1 at 136-37).

Had the events in this case occurred prior to 2009, case law suggests that Harty might not be considered disabled under the 'actual disability' prong the ADA. Under *Sutton v. United Air Lines, Inc.*, "[i]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures - both positive and negative-must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act."527 U.S. 471, 482 (1999). Courts often refuse to find a disability when confronted with facts analogous to this case. *See, e.g., Fikes v. Wal-Mart, Inc.*, 322 F. App'x 882, 884 (11th Cir. 2009) (Plaintiff with knee injury not disabled where he had a ten percent impairment to the body as a whole, evidence suggested only that he suffered pain "when sitting or standing for 'long periods' and also when he bends, kneels, walks, lifts, or climbs 'excessively.' ").[2]

On January 1, 2009, however, the ADA was amended by the ADA Amendments Act of 2008. 42 U.S.C.A. §12102(4)(E)(i) (2009) (the "ADAAA"); *see also Palmer v. Albertson's LLC*,

---

[2] *See also, Allen v. U.S. Postmaster Gen.,* 158 F. App'x 240, 243 (11th Cir.2005) (plaintiff's ability to walk not substantially limited where she could still go to the grocery store, load groceries, care for herself and her children and do laundry, and where her doctor noted that she could walk eight hours a day and that her disability was limited to only 3% of her body); *Rossbach v. City of Miami,* 371 F.3d 1354, 1358 (11th Cir.2004) ("Someone who walks, sits, stands or sleeps 'moderately below average' is not disabled under the Act."); *Moore v. Hillsborough County Bd. of County Com'rs*, 544 F. Supp. 2d 1291, 1300 (M.D. Fla. 2008) ("Plaintiff has not presented evidence that her problems walking and standing were any worse than suffered by many aging adults." (citation omitted)); *Brown v. Sec'y of Florida Dept. of Corr.*, 4:05CV497-RH/WCS, 2009 WL 530103 (N.D. Fla. Feb. 27, 2009) (Plaintiff not disabled although he had "mild" limitations in his ability to walk, run, squat, or kneel. Plaintiff's treating doctor allowed him to return to "light working duty."). *Contra Weiss-Clark v. Kaiser Foundation Health Plan of the Northwest*, No. CV99-1083-BR, 2001 WL 204823 at * 3 (D. Or. Feb. 7, 2001) (On summary judgment, Plaintiff sufficiently established disability under the ADA by providing evidence that "she is unable to walk or to drive for extended periods of time or to bend and to stand on a continuous basis"–even though the injury was likely not permanent.)

No. 4:09-CV-00137-SPM-WCS, 2010 WL 785652, at n.2 (N.D. Fla. March 3, 2010).[3] The purpose of the ADAAA was, in part, "to reject the requirement enunciated by the Supreme Court in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and its companion cases that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures." Pub. L. No. 110-325, September 25, 2008, 122 Stat 3553.[4] In effect, these provisions require courts to look at a plaintiff's impairment in a hypothetical state where it remains untreated. *Lloyd v. Hous. Auth. of the City of Montgomery, Ala.*, 2:10-CV-1103-MEF, 2012 WL 1466561 at *7 (M.D. Ala. Apr. 27, 2012).

Moreover, Congress explicitly lowered the standard for "substantially limits" noting that "lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities" and that "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, . . . the question of whether an individual's impairment is a disability under

---

[3] Although the parties do not directly address this amendment, it clearly applies to the facts of this case because Harty's alleged discriminatory termination took place after January 1, 2009. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (noting that courts normally must apply the laws and interpretations that were in force when the complained-of acts occurred).

[4] Regulations implemented as a result of the ADAAA state that, "[a]n individual who, because of the use of a mitigating measure, has experienced no limitations, or only minor limitations, related to the impairment may still be an individual with a disability, where there is evidence that in the absence of an effective mitigating measure the individual's impairment would be substantially limiting." 29 C.F.R. Pt. 1630, App.

the ADA should not demand extensive analysis." Pub. L. No. 110-325, § 2(a)(6), 122 Stat. at 3553.[5]

Few courts have had occasion to consider the effects of the ADAAA. Those that have, apply it broadly to encompass disabilities that previously might have been excluded. *See, Lloyd v. Hous. Auth. of the City of Montgomery, Ala.*, 2:10-CV-1103-MEF, 2012 WL 1466561 (M.D. Ala. Apr. 27, 2012) (Plaintiff with asthma and high blood pressure sufficiently established disability); *Fleck v. WILMAC Corp.*, No. 10-05562, 2011 WL 1899198 (E.D. Penn. May 19, 2011) (Plaintiff with ankle injury established actual disability for purposes of a motion to dismiss by alleging she was unable to stand for more than an hour, but could work with the use of a "cam boot."). *Contra Koller v. Riley Riper Hollin & Colagreco*, CIV.A. 10-2933, 2012 WL 628009 (E.D. Pa. Feb. 28, 2012) (Plaintiff not disabled because even though he had difficulty moving and driving for two weeks after knee surgery, he provided no evidence that he had a limitation at the time of his termination).

In this case, Harty submits evidence, when taken in a light most favorable to him, that suggests he has substantial limitations in several "major life activities" including walking,

---

[5] *See also* Statement of Managers to Accompany ADA Amendments Act, 154 Cong. Rec. S8840, S8841 (daily ed., Sept. 16, 2008) ("It is our expectation that because the bill makes the definition of disability more generous, some people who were not covered before will now be covered . . . . This bill lowers the standard for determining whether an impairment constitute[s] a disability and reaffirms the intent of Congress that the definition of disability in the ADA is to be interpreted broadly and inclusively."); 29 C.F.R. §1630.2(j)(1)(vi) (2012) ("The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this assessment, the term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA."); *Gil v. Vortex, LLC*, 697 F. Supp. 2d 234, 238 (D. Mass. 2010).

standing, lifting, bending, and performing manual tasks.[6] 29 C.F.R. § 1630.2(i)(1)(i). While he is able to ameliorate the effects of his disability by doing these things "in a different way," the ADAAA does not permit such measures to be considered. 29 C.F.R. § 1630.2 (j)(5) ("Examples of mitigating measures . . . include, but are not limited to: . . . (iv) Learned behavioral . . . modifications . . ."). Rather, the Court must hypothesize whether Harty would be "substantially limited" in the absence of any mitigating behaviors. As problematic as this is, it does not occur in a vacuum.[7] There is some evidence to suggest that Harty would be substantially limited without his mitigating behavior. For example, the Veterans Administration assigned him a disability rating of forty percent and two physicians opined that Harty was permanently restricted from squatting, using stairs, kneeling, running or jumping.[8] In light of Congressional directives in the ADAAA, and for the purposes of summary judgment, Harty has presented enough evidence to suggest that he is actually disabled.

Assuming, *arguendo*, that Harty is not substantially impaired, there is sufficient evidence that he is disabled under the "regarded as" prong of the ADA. Under the more expansive standards of the ADAAA, an individual is regarded as disabled if she establishes that "she has been

---

[6] According to the regulations, "the major life activity of performing manual tasks . . . could have many different manifestations, such as performing tasks involving fine motor coordination, or performing tasks involving grasping, hand strength, or pressure. Such tasks need not constitute activities of central importance to most people's daily lives, nor must an individual show that he or she is substantially limited in performing all manual tasks." 29 C.F.R. Pt. 1630, App.

[7] *See supra*, note 4.

[8] While these acts may not be "major life activities," they could support a reasonable inference that Harty was substantially limited in walking, standing, lifting, bending, and performing manual tasks–which are defined as "major life activities" in the regulations. 29 C.F.R. § 1630.2 (i)(1)(i).

subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment . . . . " Pub.L. No. 110–325 § 3(3)(A), 122 Stat. at 3555. In contrast to the pre-amendment ADA, an individual is "regarded as" disabled under the ADAAA "whether or not the impairment limits or is perceived to limit a major life activity." *Id*. "[E]vidence that a covered entity took a prohibited action because of an impairment will establish coverage . . ." 29 C.F.R. Pt. 1630.2(l), App.; 29 C.F.R. §1630.2(l). In this case, there is evidence that, *inter alia*, Sanford knew of Harty's restrictions, and that his direct supervisor "asked [him] to resign because of [his] restrictions." (Doc. 24-2, 158:8-10). Taken in a light most favorable to Harty, this is sufficient to survive a motion for summary judgment.

### B. "Qualified Individual"

Sanford also argues that Harty is not a "qualified individual" under the meaning of the ADA because he could not perform the "essential functions" of the job.

> The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. . . . [C]onsideration " shall be given to the employer's judgment as to what functions of a job are essential and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. §12111(8)(2009); *see also D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225 (11th Cir. 2005) (emphasis added). The ADA does not require the employer to eliminate an essential function of a job. *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005). However, "the ADA may require an employer to restructure a particular job by altering or eliminating some of its marginal functions." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260

(11th Cir. 2001). "[E]ssential job functions 'are the fundamental job duties of a position that an individual with a disability is actually required to perform.'" *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, (11th Cir. 2007) (quoting *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)). "Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors." *D'Angelo*, 422 F.3d at 1230. The EEOC regulations detail a nonexclusive list of factors to consider in determining whether a particular function is essential:

> (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spend on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the terms of a collective bargaining agreement; (vi) the work experience of past incumbents in the job; and/or (vii) the current work experience of incumbents in similar jobs.

29 C.F.R. §1630.2(n)(3)(i) (2012). The Eleventh Circuit accords an employer's view substantial weight in the calculus, but that factor alone is not dispositive. *D'Angelo*, 422 F.3d at 1233.

In the instant case, Gilbert Lareau, a Sanford foreman in the same position as Harty, testified that although the physical activities Harty is restricted from performing are listed in the foreman's job description, a foreman need not engage in the precise physical maneuvers listed in the physical requirements of the job description in order to fulfill his duties. (Doc. 29, at 21-22). Lareau testified that jumping, squatting, and running were not required. (*Id.*). While Lareau testified that bricklaying is customarily accomplished by kneeling, the task can be performed by other methods, such as bending at the waist. (*Id.*). Lareau's testimony, viewed in the light most favorable to Harty, indicates a dispute of material fact as to whether kneeling–or any other physical activity which Harty is restriction from performing–is an essential job function. Accordingly, there are disputed issues of material fact which preclude summary judgment.

It is therefore,

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 23) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 8, 2012.

Copies furnished to:

Counsel of Record
Unrepresented Party

                                              GREGORY A. PRESNELL
                                  UNITED STATES DISTRICT JUDGE